# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2850

_____

James Riley,

           Appellant,

    v.

Sun Life and Health Insurance
Co., formerly known as Genworth
Life and Health Insurance Co.;
Group Long Term Disability
Insurance,

           Appellees.

\*
\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the District
\* of Nebraska.
\*
\*
\*
\*
\*

_____

Submitted: May 10, 2011
Filed: October 7, 2011

_____

Before MURPHY, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

James Riley appeals the district court's adverse grant of summary judgment in favor of Sun Life in this Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., benefits case. The sole issue is whether Sun Life is entitled to offset from Riley's employer-provided long-term disability benefits the amount that Riley receives in Department of Veterans Affairs (VA) benefits each month. The

district court upheld Sun Life's decision to offset Riley's VA benefits from his long-term disability award. We reverse.

## I.      BACKGROUND

Riley worked for Sumaria Systems until his multiple sclerosis (MS) symptoms precluded him from performing his job duties. Sun Life provided an ERISA-qualified long-term disability plan (the Plan) for Sumaria employees. When Riley became too disabled by his MS symptoms to work, he made a claim for long-term disability benefits under the Plan. Sun Life approved the claim and began paying benefits in January 2005. It is undisputed that Riley is entitled to these long-term disability benefits due to his MS.

Riley is a veteran of the Vietnam War and receives monthly disability benefits pursuant to the Veterans' Benefits Act, 38 U.S.C. §§ 101 et seq., (VBA) as a result of his MS. The administrative record indicates that Riley's MS is considered a service-related disability contracted during a period of war.[1] In 2007, in the process of updating Riley's records, Riley completed a supplemental questionnaire from Sun Life disclosing his receipt of these VA benefits. After gaining this knowledge, Sun Life took the position that it was entitled to offset the amount that Riley received in VA benefits. The Plan provides that monthly disability payments can be reduced by "other income," and, as relevant and relied upon by Sun Life, the Plan defines "other

---

[1]Medical evidence contained in the administrative record indicates that Riley began complaining of difficulty using his hands, a not uncommon symptom of MS, during his active duty service time in 1973 and 1974. The medical examiner found that in light of these active duty medical reports, and other medical reports indicating early MS symptoms dating to at least as early as 1981, Riley had incurred MS during his period of active service. See 38 U.S.C. § 1112(a)(4) (stating that any veteran who developed MS within seven years from the date of separation from service during a period of war shall be presumed to have incurred or aggravated the MS during the period of service).

income" as "[a]ny amount of disability or retirement benefits under: a) the United States Social Security Act [SSA] . . . ; b) the Railroad Retirement Act [RRA]; c) any other similar act or law provided in any jurisdiction." Sun Life recalculated Riley's benefits offsetting his VA benefits and claimed a net overpayment of $20,831.06 for the years that Riley received both VA and Plan benefits without offset.

Riley timely appealed the Plan's determination, and Sun Life denied his appeal, again citing the Plan's "other income" language quoted above. Riley timely appealed this determination to the district court. The district court found that because MS was the same disability underlying both Plan and VA benefits, the VA benefits qualified as "other income" and should be offset. Riley appeals.

## II. DISCUSSION

We review de novo the district court's grant of summary judgment regarding an ERISA plan administrator's benefits determination. Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir.), cert. denied, 131 S. Ct. 648 (2010). If, as here, the Plan reserves discretionary power to construe Plan terms or make eligibility determinations, the administrator's decisions concerning those matters are reviewed for an abuse of discretion. Id. However, as in this case, "where a plan's decision . . . is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed de novo." Meyer v. Duluth Bldg. Trades Welfare Fund, 299 F.3d 686, 689 (8th Cir. 2002).

The Plan cites High v. E-Systems Inc., 459 F.3d 573 (5th Cir. 2006), and Jones v. ReliaStar Life Insurance Co., 615 F.3d 941 (8th Cir. 2010), in support of its arguments that its decision to offset VA benefits was reasonable and not an abuse of its discretion. In High, the plan language stated in relevant part that long-term disability benefits could be offset by "benefits payable under any other group disability plan." 459 F.3d at 578. The High plan administrator found, and the

reviewing courts agreed, that under that broad plan language, VA disability benefits could be offset. Id. at 578. But see Williams v. Group Long Term Disability Ins., No. 07-6022, 2008 WL 2788615, at *3 (N.D. Ill. July 17, 2008) (disagreeing with High and holding that even though the plan language was identical to the plan language in High, VA benefits could not be offset because VA benefits were not specifically spelled out as an offset and, because VA benefits are "different," the court was "hesitant" to take away VA benefits unless it was "clear to the [employer] at the outset" that VA benefits would be offset).

Likewise, in Jones, we upheld the Plan's discretionary decision to offset VA benefits from the employee's long-term disability benefits. 615 F.3d at 946. However, the Jones plan language defined "other income" that could be offset as income based upon "the same or related disability for which [the participant is] eligible to receive benefits under the Group Policy." Id. at 944 (quotation omitted). High and Jones are thus wholly distinguishable from the instant case based on the different language of the plans at issue. The Jones plan language required an other-income offset for benefit payments based upon the same or related disability. The High plan very broadly allowed offsets for payments from "any other group disability plan." The most that one can conclude from both High and Jones is that VA benefits may not always be entitled to protection simply by virtue of their status as veterans' benefits. But, in any event, High and Jones do not inform the outcome of this case because they both involve plan language quite different from the Plan language relied upon here.[2]

The "other income" section of the Plan at issue here provides that an other-income offset should occur if benefits are received from the SSA or the RRA or "any other similar act or law provided in any jurisdiction." Although the Plan administrator

_____

[2]We also agree with Judge Andersen's analysis of High in Williams that Veterans' benefits established by Congress can hardly be defined as "a group disability plan." Williams, 2008 WL 2788615, at *3.

must have ultimately determined that the VBA was similar to the SSA and/or the RRA since Riley's VA benefits were offset, we can find no evidence in the record that the Plan administrator undertook a meaningful analysis of this federal legislation in making this determination. Instead, the Plan administrator simply informed Riley that he was "on notice" that his VA benefits could be offset because Riley's original application for long-term benefits contained an inquiry as to what other disability income benefits he was receiving, and VA benefits were included as an example of possible income in the inquiry. However, all that can be gleaned from the application's language is that Sun Life was interested in knowing what other sources of income were available to Riley. The application did not describe the other sources of income as "offsets." Nor did the actual Plan (as opposed to the application) contain any other provision expressly putting Riley on notice that VA benefits would be offset.[3]

Accordingly, we disagree with the Plan administrator's decision to offset Riley's VA benefits. Those benefits, for a wartime service-related disability, as a matter of statutory construction, do not derive from an act that is "similar to" the SSA or RRA. The SSA and RRA disability benefits'[4] programs are both federal insurance programs based upon employment and the amount of an award under their terms depends upon how much has been paid in. See generally Hisquierdo v. Hisquierdo, 439 U.S. 572, 573-74 (1979) (discussing the history and purpose of the RRA, including the

[3]To the contrary, Sun Life was on notice that at least one of its exemplar federal statutes, the SSA, does not permit offset of United States Code Title 38 Veterans' benefits, the source of Riley's disputed payments, against Social Security disability awards. See 42 U.S.C. § 424a(a)(2)(B).

[4]The RRA has a two-tier system of benefits. The upper tier, or Tier I, benefits are tied to earnings and career service, and are available to railroad employees with at least ten years of service in the industry. 45 U.S.C. § 231a(a)(1). The lower benefits tier, Tier II, corresponds to the benefits an employee would receive were he covered by the SSA. Id. § 231b(a)(1).

similarities of RRA's "second tier" insurance and disability program to the SSA system); <u>Yost v. Schweiker</u>, 699 F.2d 438, 440 (8th Cir. 1983) (noting the overlap between the SSA and RRA insurance programs); 42 U.S.C. §§ 401 et seq. (SSA); 45 U.S.C. §§ 231 et seq. (RRA). This correlation is necessary because the funding for SSA and RRA disability benefits derives from a tax on both the employee and employer. 26 U.S.C. §§ 3101, 3111(a) (setting forth basic Social Security tax); 26 U.S.C. §§ 3201, 3221 (setting forth basic Railroad Retirement tax).

Conversely, the VA benefits Riley is entitled to receive are not from an "insurance" program, but instead are considered obligatory compensation for injuries to service men and women during military duty. Since 1789, "after every conflict in which the Nation has been involved Congress has, in the words of Abraham Lincoln, 'provided for him who has borne the battle.'" <u>Walters v. Nat'l Ass'n of Radiation Survivors</u>, 473 U.S. 305, 309 (1985). Riley's benefits were awarded based solely on service[5] during a time of war[6] plus an injury. These benefits are unrelated to length of service (subject to a ninety-day floor for the latent diseases and conditions), rank, or amount of pay received while serving. 38 U.S.C. §§ 1110, 1112. Instead, the amount of benefits depends upon the extent of the veteran's injury. <u>Id.</u> § 1114. VBA benefits are funded by Congress through the VA's budget instead of by a tax on members of the military. Additionally, the VBA sets forth a much easier road for the disabled veteran than the SSA or RRA claimant. 38 U.S.C. § 5107 provides that the Secretary of Veterans Affairs must consider all lay and medical information, and when the evidence is in equipoise, "the Secretary shall give the benefit of the doubt to the

_____

[5]Service-based VA benefits are awarded, as previously noted, when a veteran is injured either while serving during a period of war, or for certain latent diseases and conditions, within one to seven years of separation from service during a period of war. 38 U.S.C. §§ 1110, 1112(a).

[6]There are also disability benefits available for members of the military service who are injured while on active duty but not during a period of war. 38 U.S.C. § 1131.

claimant." Id. § 5107(b). Compare Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (noting that the burden is on the claimant to prove SSA disability from past relevant work before the burden shifts to the Commissioner to show there are jobs in the national economy that claimant can perform) and Reter v. R.R. Ret. Bd., 465 F.3d 896, 898 (8th Cir. 2006) (same for RRA disability), with 38 U.S.C. § 5107; see also Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1200, 1205 (2011) (describing the unique character of veterans' benefits, including features that distinguish VA benefits' cases from any other type of litigation and noting, "'[t]he solicitude of Congress for veterans is of long standing'") (quoting United States v. Oregon, 366 U.S. 643, 647 (1961)); Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666-67 (Tex. 1987) (construing an insurance policy with the same language as the instant case and concluding that the VBA is not "similar" to the SSA and/or the RRA, in large part because of the different objectives for which the three acts were created and the manner in which they are implemented).

As the Henderson Court recently noted, "[t]he contrast between ordinary civil litigation . . . and the system that Congress created for the adjudication of veterans benefits claims could hardly be more dramatic." 131 S. Ct. at 1205-06. Indeed, "[t]he [VBA benefits] process is designed to function throughout with a high degree of informality and solicitude for the claimant." Walters, 473 U.S. at 311. SSA and RRA claimants are not nearly so fortunate. The differing burdens, funding, and most especially, policy purposes of the VBA versus the SSA and/or the RRA indicate that as a matter of statutory construction, the VBA is in no relevant way similar to the SSA or the RRA.

## III. CONCLUSION

We reverse and remand to the district court with directions to enter judgment in favor of Riley.

COLLOTON, Circuit Judge, dissenting.

The question presented on this appeal is whether Sun Life and Health Insurance Company reasonably interpreted the long term disability Plan under which James Riley receives a monthly benefit. The Plan provides that in calculating a monthly benefit, the administrator should subtract "Other Income" that Riley is eligible to receive from other sources. "Other Income" includes "any amount of disability or retirement benefits under" the Social Security Act ("SSA"), the Railroad Retirement Act ("RRA"), or "[a]ny other similar act or law provided in any jurisdiction." The parties dispute whether Sun Life abused its discretion when it concluded that the Veterans' Benefits Act ("VBA"), under which Riley receives a disability benefit, is a "similar act or law."

"Similar" means "having characteristics in common." *Webster's Third New International Dictionary* 2120 (2002). The court cites differences between the VBA and the SSA and RRA, but largely ignores many similarities. All three acts "are (1) governmental or legislative plans providing for (2) periodic payment (3) to qualified individuals (4) who have suffered a physical disability (5) without regard to fault. In addition, all provide death benefits, have anti-assignment clauses, and are administered by independent agencies." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987). Contrary to the court's blanket statement that VBA benefits are "considered obligatory compensation for injuries to service men and women during military duty," *ante*, at 6, the VBA also provides for benefits based on *non-service-connected* disabilities suffered at any time by a "veteran of a period of war." 38 U.S.C. § 1521. Those VBA benefits, like benefits under the SSA and RRA, are essentially based on employment. And because the Plan calls for comparison of the "act or law," not a particular section on which benefits are based, application of the "Other Income" provision must be the same whether a claimant receives VBA benefits based on a service-connected or non-service-connected disability.

-8-

The Plan's reference to "similar act or law" is ambiguous. *See Barnett*, 723 S.W.2d at 665. Under the terms of this Plan, the administrator has discretion to construe ambiguous terms. J.A. 136. Unlike a case arising under certain state laws applicable to insurance policies, where ambiguities must be construed against an insurer, *e.g.*, *Barnett*, 723 S.W.2d at 665, the law of ERISA requires that we must uphold an administrator's interpretation if it is reasonable. *Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). The administrator considered the principal authorities cited by Riley, *Barnett* and *Williams v. Group Long Term Disability Insurance*, No. 07-6022, 2008 WL 2788615, at *2-3 (N.D. Ill. July 17, 2008), both of which analyze the relevant federal legislation, before concluding that disability benefits under the VBA should be treated as "Other Income" under this Plan. Given that the VBA has a number of relevant characteristics in common with the SSA and RRA, it was not an abuse of discretion for the administrator to conclude that the VBA is a "similar act or law" under the Plan, and to offset Riley's monthly disability benefit based on disability benefits received under the VBA. *Cf. High v. E-Systems, Inc.*, 459 F.3d 573, 578-79 (5th Cir. 2006) (holding that where ERISA plan defined "other income benefits" to include benefits payable under the SSA or "any other group disability plan," administrator did not abuse its discretion in concluding that VBA benefits were "other income benefits").

The court avoids this conclusion by answering a different question. The majority eschews the abuse-of-discretion standard of review that is dictated by *Conkright* and *Firestone*, and embraced by both parties. Appellant's Br. 12; Appellees' Br. 13. The court instead reviews the administrator's interpretation of the Plan *de novo*, on the premise that it is simply construing "existing law." *Ante*, at 3. But the question presented here is not merely the meaning of a statute, as in *Meyer v. Duluth Building Trades Welfare Fund*, 299 F.3d 686, 689 (8th Cir. 2002). The issue is whether the relevant acts, properly understood, are "similar" within the meaning of

the Plan. Whether three different laws are "similar" involves a determination about the scope of an ambiguous term in the Plan.

Freed of the restraint demanded by abuse-of-discretion review, the court makes a reasonable case on *de novo* review that dissimilarities outweigh the similarities of the VBA to the SSA and RRA. Yet there is a reasonable case on the other side too. Applying the correct standard of review in the ERISA context, the administrator's decision should not be disturbed. I would affirm the judgment of the district court.

_____